# Gilbert's Appeal.   Johnson's Estate.

1. The finding of an auditor on the facts should not be disturbed unless for clear error.

2. After the death of a partner, two of the administrators sold the decedent's interest in the firm at private sale to a surviving partner, who was also an administrator, at a price less than the value.   *Held,* that the sale was voidable at the election of any party in interest, and all the administrators were chargeable with the actual value.

3. That the administrators acted in good faith and under the advice of counsel, would not justify the transaction.

4. One of the administrators mingled the funds of the estate with his own and used them in his business.   *Held,* that the accountants were chargeable with interest on the funds of the estate thus treated.

March 5th 1875.   Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON and PAXSON, JJ.

·Appeal from the decree of the Orphans' Court of *Berks county :* Of January Term 1875, No. 172.   In the estate of Henry W. Johnson, deceased.

The decedent died in June 1863, intestate, leaving a minor son, Edward N. Johnson, who had for his guardian N. Jacoby.   Administration of his estate was granted to Peter Y. Brendlinger, W. K. Grim and J. B. Rhoads.   Brendlinger and Grim, two of the administrators, having settled an account February 17th 1865, William M. Baird, Esq., was appointed auditor to examine and adjust it upon exceptions filed, and to report distribution.   He reported that the balance due the estate was $2502.56.   This report was referred back to him October 5th 1867.   On the 21st of May 1870, at the request of Mr. Baird, the court relieved him from his duties as auditor, and on the 21st of November 1871 Edwin Shalter, Esq., was appointed auditor for the same purposes.

The decedent, at the time of his death, was in partnership with J. B. Rhoads, one of the administrators, and Washington Deysher, in the Great Western Hotel, Philadelphia, the decedent and Rhoads each having an interest to the extent of one-fourth ; the decedent had other property also.

There were two questions which were mainly considered in the case.

1. Whether the accountants were chargeable with interest on money of the estate which had passed into their hands, and had been mingled with the money of one of the administrators and used in his business.

2. As to the amount with which they should be chargeable on account of the decedent's interest in the Great Western Hotel.

The auditor found that previously to May 1864, Brendlinger kept a private account in the Pottstown bank; after that time he mingled the money of the estate with his private account; he kept after that time no bank account as administrator. A considerable amount of money came into his hands as administrator; he also made payments on account of the estate; the amounts drawn from the bank or mingled with his own funds were far in excess of the payments he made for the estate, and there was no evidence that the money was used for the benefit of the estate.

As to the second question: By the inventory filed July 2d 1863, the interest of the decedent in the Great Western Hotel was appraised at $1500. On the 2d of September 1863, under the advice of the counsel of the administrators, another and *ex parte* appraisement was made, fixing the amount of the decedent's interest at $113.88. Subsequently this interest was sold at private sale to J. B. Rhoads, one of the administrators, for $150, and with that amount, instead of $1500, the administrators charged themselves in their account.

On the hearing before the auditor, the testimony of Rhoads and Brendlinger was taken. There was other testimony taken by him in relation to the value of the decedent's interest in the hotel.

Deysher, the other partner, testified that he supposed the hotel property would have brought $3500 at public sale; that he would have given $1000 for the decedent's interest in the concern; that he was waiting to buy it and had the money ready; in November 1863, Rhoads sold his own fourth and that of the decedent for $2000.

F. R. Baugh testified that the hotel books had been put into his hands to ascertain how the money matters stood; he examined the books and found the profits of the firm during its continuance to be $5349.73.

The counsel of the administrators testified, that upon consultation with the guardian of the minor, they thought it best to sell the interest in the firm to Rhoads for $150, upon his assuming the liabilities of the firm, as Deysher and Rhoads, the surviving partners, were not responsible, and they would have the settlement of the firm accounts.

The auditor reported that from the testimony outside of that of Rhoads and Brendlinger, the interest of the decedent in the

hotel was worth much more than it had been sold for ; that their testimony should not be taken into consideration, the one being administrator and the other partner as well as administrator. Taking the testimony of Baugh and Deysher, he found that the interest of the decedent was worth $2337.45. He therefore charged the administrators with that sum and interest. He also, by various schedules accompanying his report, showed the amount of money received from the book accounts of the hotel concern, the money received generally on account of the estate, interest on the money of the estate mingled with the accountant Brendlinger's own funds and other interest. Interest was charged to April 23d 1873. As the result of the whole, he found that there was due from the administrators to the estate $8648.15, after allowing $1200 compensation to the accountants and deducting the costs of the audit ; this sum he awarded to the minor.

Exceptions were filed to the report. They related to the surcharges in the account, and also that the auditor erred in not considering the testimony of Rhoads and Brendlinger.

The court (Woodward, P. J.) held that their testimony was competent, and without deciding any of the other questions raised by the exceptions, referred the report back to the auditor for re-examination, in view of the rejected testimony of Brendlinger and Rhoads.

The auditor made a second report, in which he said that after a careful examination of the whole testimony he was of opinion that the testimony of Baugh, Deysher and other disinterested witnesses, should outweigh that of the administrators, who were interested. He therefore reported as he had before done.

Exceptions were filed to the report, principally as to the findings of the facts.

The exceptions were argued before the lay associate judges only.

The opinion of the court as delivered by them was as follows :

The correctness of Mr. Baugh's finding in his examination of the books, as being the profits of the firm, to wit, $5349.73, is made questionable by other testimony, and besides, there being no evidence that the administrators received their proportion, to wit, $1337.43, or any part thereof, we think that the auditor erred in charging them with it, as well as the $1000 charged to them for the interest of the estate in the property of the firm, when the proof is that they sold it to Mr Rhoads, one of the administrators, for $150. The law forbidding a decedent's property to be purchased by the administrator, it therefore does not recognise such a purchase, and compels us to disregard it. But from the well-known character of the administrators, we are induced to believe that they acted in good faith towards the estate, and in obedience to the advice of their counsel. We must therefore take the amount sold for, to wit, $150, as denoting their

estimate of its value, no doubt based upon the report of the appraisers and their own judgment. And then, if we take other testimony as to its value, to wit, $1000, the average will be $575, which amount, with interest, to wit, $327.75, will amount to $902.75, which amount the administrators should be charged with, in lieu and instead of $2337.43, and $1332.20 interest thereon. And in view of the fact that administrators cannot always safely invest various amounts received from time to time, they should not, we think, be held as rigidly as the auditor has, to the payment of interest, to wit, 6 per cent., computing it from six months after they received those amounts, and a deduction therefore of one-third of the amount, to wit, $1090.93, leaving that item $2181.87.

"And after the aforesaid corrections of and deductions from the amounts found due the estate in Mr. Shalter's report are made, said report is confirmed absolutely."

The sum by these corrections decreed to be in the accountant's hands was $4790.34.

E. W. Gilbert, who had been appointed guardian in the place of N. Jacoby, appealed to the Supreme Court, and in a number of specifications assigned for error, that the court did not confirm the report of the auditor.

*D. & J. N. Ermentrout*, for appellants. — The report of an auditor on facts should not be corrected, except for plain mistake: Brua's Appeal, 5 P. F. Smith 297; Stehman's Appeal, 5 Barr 414; Hernstead's Appeal, 10 P. F. Smith 428; Wistar's Appeal, 4 Id. 60. One mixing his goods with those of another, so that they cannot be distinguished, must be the sufferer: Kisterbock's Appeal, 1 P. F. Smith 486. A trustee must neither mingle nor deposit the assets of the trust with his own: Beck *v.* Uhrich, 4 Harris 503; Robinett's Appeal, 12 Casey 174; Perry on Trusts 428; 2 Wms. Ex. 1566–70. An administrator selling at private sale is responsible for the full value of the property, irrespective of the price he received: Lothrop *v.* Wightman, 5 Wright 302.

*F. L. Smith*, for appellees.—Accountants are not chargeable with interest during the pendency of litigation on exceptions: Hoopes *v.* Brinton, 8 Watts 73; Kelsey *v.* Murphy, 6 Casey 341: Dietterich *v.* Heft, 5 Barr 94; McElhenny's Appeal, 10 Wright 350.

Mr. Justice PAXSON delivered the opinion of the court, March 15th 1875.

The finding of an auditor upon the facts should not be disturbed unless for clear error. The reasons for this rule are substantial and have been so often stated as to make their repetition unnecessary. In this case the exceptions to the report of the auditor upon the issues of fact were sustained by the Orphans' Court, and the fund for distribution reduced from $8648.15 to $4790.34. This was assigned for error.

[Gilbert's Appeal.]

We fail to see in the opinion of the court below any sufficient reason for the judgment. If Mr. Baugh's evidence as to the profits of the firm was not reliable, there was an easy mode of showing it. His statements were based mainly upon the books of the firm in the possession of the administrators, of which firm one of the administrators was a member. No attempt was made to show from those books that the estimate of the witness was inaccurate. Mr. Rhoads was in the position of administrator as well as surviving partner. It was especially his duty to have closed up the business of the firm, and accounted to the estate of his deceased partner. No account appears to have been furnished by him as surviving partner. Instead of doing so he became the purchaser from his co-administrators of the interest of his deceased partner. The sale was private, and the amount paid $150. Not long after he thus acquired this interest he made a re-sale of it at a large advance. The administrators may have acted in good faith, and under the advice of counsel, as was suggested by the court below. But neither good faith nor the advice of counsel can avail to sustain such a transaction as this. It does not need authority to show that an administrator cannot so deal with property intrusted to his care. The sale to Rhoads was voidable at the election of any party in interest; and the accountants were properly charged with what the auditor found to be the real value of Dr. Johnson's interest in the firm property and business.

The court below reduced the amount of interest with which the auditor had surcharged the accountants, for the reason " that administrators cannot always safely invest various amounts received from time to time." There would have been more force in the reason assigned if such surcharge had been made because of the failure of the accountants to keep the funds of the estate invested. This, however, was not the ground of the surcharge. It was made for the reason that the administrators had allowed one of their number to mingle the funds of the estate with his own money and use it in his business. That such use was made of the money sufficiently appears from the evidence. The liability to account to the estate for interest is the legitimate conclusion from this fact.

The court below in weighing the evidence evidently relied upon " the well-known character of the administrators." We do not lose sight of the fact, however, that they were the parties immediately interested in the decree, and we see no good reason why their testimony should outweigh that of other witnesses who have no interest in the controversy.

> The decree of the Orphans' Court sustaining the exceptions to the report of the auditor is reversed; the report of the auditor is confirmed, and distribution ordered to be made in accordance therewith ; the costs of the appeal to be paid by the appellees.